Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6495 | **DATE** | 12/14/2001 |
| **CASE TITLE** | | Brindisi vs. Massanari | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court affirms the ALJ's decision. The Court denies Tina Brindisi's motion for summary judgment (6-1) and grants the Commissioner's motion for summary judgment (10-1). Judgment is entered in favor of the Commissioner.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 17 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 14 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | DOCKETING 01 DEC 15 AM 11:32 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TINA BRINDISI, on behalf of )
ROBERT BRINDISI, a minor, )
)
Plaintiff, )
)
v. ) Case No. 00 C 6495
)
LARRY MASSANARI, Acting )
Commissioner, Social Security )
Administration, )
)
Defendant. )

**DOCKETED**

**DEC 1 7 2001**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Robert Brindisi, now nine years old, has suffered repeated and persistent ear infections since before his second birthday. By the time he turned six, he had had nine different surgeries to insert or replace tubes in his ears to help drain the fluid and allow him to hear. As a result of Robert's repeated ear problems, his speech and language abilities are delayed; he was also diagnosed with attention deficit disorder, though it is not entirely clear that that disorder arises from or is related to his speech and hearing problems. Robert also appears to suffer separation anxiety.

Tina Brindisi, Robert's mother, filed a claim for Supplemental Security Income for Robert. In that application, she alleged that Robert suffered from bad hearing, delayed speech, allergies[1] and hyperactivity; she claimed that Robert was disabled by these injuries beginning on

---

[1]This appears to be the only mention of allergies as a basis for Robert's disability claim. There is absolutely nothing in the record about Robert's allergies; the medical evidence does not mention allergies, and neither of Robert's parents said anything about allergies before the ALJ.

July 6, 1992, the day he was born. The agency denied Robert Brindisi's application initially and on reconsideration, and his mother requested a hearing before an administrative law judge. Administrative Law Judge Peter Caras, to whom the case was assigned, held a hearing in Brindisi's case on June 24, 1998. Tina Brindisi and her son both appeared, as did Robert's father (also named Robert). They were represented by counsel, and both Tina and Robert (the elder) testified, answering questions from both ALJ Caras and their attorney. Robert, though present, did not respond to the ALJ's questions and said nothing at the hearing. In a decision dated September 14, 1998, ALJ Caras concluded that Robert was not disabled for purposes of entitlement to SSI. The ALJ's decision became the final agency decision when the Appeals Council denied the Brindisis' request for review. *See* 20 C.F.R. §404.981. Tina Brindisi then filed this lawsuit on Robert's behalf, seeking review of the agency's decision and an award of disability insurance benefits. Both the Brindisis and the Commissioner have moved for summary judgment.

In determining whether a child is disabled within the meaning of the Social Security Act, the Commissioner employs a multi-step analysis. The Commissioner first asks whether the child is currently engaged in substantial gainful activity, i.e., work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. §§404.1520(a)(b), 404.1510. The Commissioner next asks whether the child is suffering from a severe impairment, i.e., one which as an impairment or combination of impairments causes more than a minimal functional limitation. 20 C.F.R. §416.924(b). In deciding whether the impairment or impairments are severe the Commissioner considers them in relation to the child's age. 20 C.F.R. §416.924b(a)(1). If the Commissioner concludes that the child suffers

2

from a severe impairment, he moves on to step three; if not, the child is determined to be not disabled and the process ends. At step three, the Commissioner determines whether the child's impairment meets or equals (medically or functionally) one of the impairments listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. In making this determination, the Commissioner considers whether the impairment prevents the child from functioning independently, appropriately and effectively in an age appropriate manner. 20 C.F.R. §416.926a(a). If the Commissioner finds that the child suffers from a severe impairment that meets or equals something in the listing, he must find the child to be disabled and the inquiry ends; if, on the other hand, the Commissioner finds that the child's impairment does not meet or equal a listed impairment, the Commissioner must do an "individualized functional assessment" to determine whether the child has an impairment or combination of impairments that would be of comparable severity to an impairment that would disable an adult. 20 C.F.R. §416.924d(a). The Commissioner considers the nature of the impairment, the child's age and ability to be tested at that age, the ability to perform age appropriate activities and other relevant factors. 20 C.F.R. §416.924d(a).

ALJ Caras applied this analytical framework to Robert Brindisi's case and correctly concluded, at step one, that Robert, who was only six at the time of the hearing, clearly had not engaged in any kind of gainful activity. Record at 13. At step two, the ALJ concluded that Robert suffered from a combination of severe impairments including speech and language delays, recurrent otitis media and attention deficit disorder. Record at 14. The ALJ concluded that Robert's claim failed at step three, because none of those impairments met or equaled the qualifications of any impairment listed in the regulations. *Id.* The ALJ then evaluated the

3

functional limitations Robert's impairments caused and concluded that Robert had marked limitation in the area of speech and language, no limitation in the area of motor development, less than marked limitation in the area of social development, less than marked limitation in the area of personal development, and less than marked limitation in the area of concentration, persistence and pace. Record at 16-18. The ALJ considered that Robert had no chronic illnesses, is not in a structured or highly supportive setting and does not use adaptations; he also considered that Robert is taking Ritalin, with a fair degree of success and no noted side effects. Record at 18. The ALJ noted that Robert was prescribed speech therapy sessions, which seemed to help, but that he was not great about adhering to the therapy schedule set for him. *Id.* Based on all of these factors, the ALJ concluded that Robert's impairments did not result in marked and severe functional limitations. Record at 19. Accordingly, the ALJ concluded that Robert was not disabled. *Id.*

Judicial review of the ALJ's decision is limited to determining whether the ALJ applied the correct legal standards in reaching a decision and whether there is substantial evidence in the record to support the findings. 42 U.S.C. §405(g); *see also Scivally v. Sullivan*, 966 F.2d 1070, 1075 (7th Cir. 1992). The Brindisis do not argue the former; they argue that the ALJ's decision is not supported by substantial evidence. The "substantial evidence" standard "requires no more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995)). In deciding whether substantial evidence exists to support the ALJ's decision, the district court "may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of

4

the [ALJ]." *Powers*, 207 F.3d at 434-35. Although the Court must "not act as an uncritical rubber stamp of the Commissioner's decision," *see Howell v. Sullivan*, 950 F.2d 343, 347 (7th Cir. 1991), the Court must affirm the ALJ's decision–even if some evidence also supports the claimant's argument–if the findings and inferences reasonably drawn from the record are supported by substantial evidence. *See* 42 U.S.C. 405(g); *Betancourt v. Apfel*, 23 F. Supp. 2d 875, 879-80 (N.D. Ill. 1998) (citing *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993)). The Court may reverse the ALJ's decision "only if the evidence 'compels' reversal, not merely because the evidence supports a contrary decision." *Betancourt*, 23 F. Supp. 2d at 880 (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

Under this standard, the Court must affirm the ALJ's decision. The ALJ concluded, without discussion, that none of Robert's impairments, either alone or in combination, equals a listed impairment. Record at 14. Robert argues that this conclusion was not supported by substantial evidence. As explained below, we disagree.

Robert first argues that his impairments met or medically equaled the requirements of the hearing impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1, §102.00, which covers special senses and speech. According to the listing, a child who is five years old or older at the time of the adjudication is disabled if he has an "[i]nability to hear air conduction thresholds at an average of 40 decibels (db) or greater in the better ear, and a speech and language disorder which significantly affects the clarity and content of the speech and is attributable to the hearing impairment." *Id.*, §102.08(B)(3). The Commissioner concedes that Robert satisfied the second half of §102.08(B)(3), i.e., that he had a speech and language disorder, attributable to his hearing impairment, that significantly affects the clarity and content of his speech, and rightly so: the

5

medical evidence shows that Robert's recurrent ear infections and resulting hearing loss affected his speech and language to the point where even his mother could scarcely communicate with him. But, the Commissioner argues, Robert did not meet the first part of the listing because he was *able* to hear at an average of 40 decibels in his better ear and the listing requires that he be *unable* to hear at an average of 40 decibels or more in the better ear. According to an audiogram administered to Robert on December 18, 1995 by Children's Memorial Hospital's Department of Communicative Disorders, Robert's *hearing* levels were as follows: in his left ear, 50 decibels at 500 Hertz, 40 decibels at 1000 Hertz, 30 decibels at 2000 Hertz, and 40 decibels at 4000 Hertz; in his right ear, 50 decibels at 500 Hertz, 60 decibels at 1000 Hertz, 50 decibels at 2000 Hertz and 40 decibels at 4000 Hertz. Record at 97. As the Court understands this test, the marked levels represent Robert's hearing threshold; he could hear at those levels but could not hear anything below those levels. Thus, at least at the time of this audiogram, Robert *could hear*, on average, 40 decibels and above in his better ear, but could not hear, on average, below 40 decibels. Robert therefore did not satisfy the requirements of the hearing impairments listed in Appendix 1. While it is true that Robert came very close to meeting this requirement, he nonetheless fell short, and this is a bright line test. The audiogram results support, rather than compel reversal of, the ALJ's findings on this issue.

As an aside, the Court notes that the Commissioner's citation to the Audiology Awareness Campaign's Internet website as a means of interpreting the audiogram was particularly unhelpful; the Seventh Circuit has noted that evidence pulled off the web without any kind of authentication is "adequate for almost nothing." *See United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) (citing *St. Clair v. Johnny's Oyster & Shrimp, Inc.*, 76 F. Supp. 2d 773,

6

775 (S.D. Texas 1999)). Any necessary explanations ought to come from the record itself. In this case the record was sufficient.

The Brindisis also argue that Robert's impairments met or medically equaled the requirements of the impairments listed in §112.06 (Anxiety Disorders) and §112.11 (Attention Deficit Hyperactivity Disorder). Assuming Robert could satisfy the primary requirements for these disorders (excessive separation anxiety for the former and marked inattention, impulsiveness and hyperactivity for the latter), he would also have to have demonstrated at least two of the following: marked impairment in age-appropriate cognitive/communicative function, marked impairment in age-appropriate social functioning, marked impairment in age-appropriate personal functioning, or marked difficulties in maintaining concentration, persistence, or pace. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, §§ 112.02(B)(2), 112.06(B), 112.11(B). Although Robert arguably experienced difficulties in each of these areas, there is substantial evidence in the record to support the ALJ's findings, made in the context of the functional equivalence analysis, that Robert suffered *marked* impairment–i.e., an impairment that "seriously interferes with" the child's ability to function, 20 C.F.R. §416.926a(e)(2)(i)–in only one area, the cognitive/communicative area.

With respect to social and personal functioning and his ability to maintain concentration persistence and pace, the record reveals as follows. As of June 29, 1994, Robert "enjoy[ed] playing with cars and trucks and attempts to sing along with songs he hears on TV." Record at 160. He is basically able to dress himself, brush his own hair and teeth and use the bathroom on his own. Record at 199, 88, 119. A February 26, 1996 pediatric speech and language evaluation from Ravenswood Hospital stated that

7

> Robert demonstrates decreased social interaction behavior and increased separation anxiety. He is a shy young boy who requires ample time to "warm up" to the clinician before participating in play interaction. Robert appears to get frustrated when he can not express his wants or needs and usually acts out behaviorally by getting angry, screaming, and kicking. Overall, Roberts social and behavioral skills are approximately one year below age level. . . . He also demonstrates inappropriate amounts of seperation anxiety and poor interactional skills.

Record at 120. A June 1998 speech and language evaluation stated that "Robert has a difficult time separating from his parent, and requires much coaxing to participate in activities," but noted that his "[a]ttention skills appear improved since last evaluation." Record at 187.

Additionally, and maybe most importantly, at the hearing before the ALJ, Robert's parents testified that Robert is able to sit and concentrate when he is taking Ritalin (though not when he is off the medication). Record at 198. They also testified that Robert plays well with a neighbor child, and that his motor and physical activities are not limited in any way. Record at 198-99. Both parents indicated that Ritalin, which Robert had been taking for about a year at the time of the hearing, helps and resolves many of Robert's issues. Record at 196 (Ritalin helps), 198 (Ritalin helps Robert to stay quiet so that he can listen and learn), 202 ("Right now he's not on his medication but if he was, he'd be sitting there listening to you and looking at you and he probably would have answered you."; "When he's on his medication, he's fine. He'll listen. I can talk to him once. He'll do what I say. When he's off it, I've got to keep talking loud, yelling."), 203 (the Ritalin sometimes slows Robert's speech, which makes him easier to understand). Again, although this evidence shows that Robert has some limitations (at least with respect to social functioning), it also supports the ALJ's finding that any limitation he had was less than "marked."

8

The Brindisis also argue that we should remand the case because the ALJ failed to "build a bridge" to support his findings that Robert's impairments do not meet or medically equal the requirements of a listed impairment. Initially, we note that this is not a case where the ALJ is alleged to have failed to consider certain evidence or certain lines of testimony that support the claimant's case; the ALJ thoroughly reviewed the evidence in the context of his functional equivalence analysis and individualized assessment of Robert's abilities. Nor is this a case where the ALJ's ultimate decision to deny benefits comes out of nowhere. It is true that ALJ Caras failed to explain the specific reasons behind his findings that Robert's impairments did not meet or medically equal a listed impairment. But he unquestionably "built a bridge" between the evidence and his ultimate decision to deny benefits, which is what the case law requires. *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (written decision must provide "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits").

Moreover, as have noted, there was no evidence in the record to contradict the ALJ's findings on the hearing impairment; the only evidence the Brindisis cite–even now–is the audiogram discussed above, which supports the ALJ's finding. And although there was arguably evidence to support Robert's arguments on the anxiety disorder and attention deficit disorder, the ALJ discussed those requirements in great detail in the context of the functional equivalence analysis. In short, the ALJ gave more than a "glimpse" into the reasoning behind his decision, and the Court will not remand on this basis.

None of this is to say that Robert is healthy. Although, as we have concluded, Robert's impairments did not render him disabled within the meaning of the law, as of the time of the

9

hearing before the ALJ, he unquestionably had a serious hearing impairment and serious speech and language issues as a result of his seemingly constant ear infections. But the record in this case covers a distinct and finite time period, and the Court has no way of knowing whether matters have improved or deteriorated since then. Although for Robert's sake and the sake of his family we hope for the former, if he is worse off now than he was in 1998, when the ALJ issued his decision, Robert can always reapply for benefits. The fact that substantial evidence existed in 1998 to warrant a denial of benefits does not necessarily mean that the same would be true today.

## CONCLUSION

For the reasons explained above, the Court affirms the ALJ's decision. The Court denies Tina Brindisi's motion for summary judgment [6-1] and grants the Commissioner's motion for summary judgment [10-1]. The Clerk is directed to enter judgment in favor of the Commissioner.

Dated: December 14, 2001

MATTHEW F. KENNELLY
United States District Judge